IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ELISHA SAMRA<br>230 Glenview Road<br>Canfield, Ohio, 44406<br><br>Plaintiff,<br>v.<br><br>VUBIQUITY, INC.<br>3900 W Alameda Ave, Suite 1700,<br>Burbank, California, 91505<br><br>**Serve also:**<br>CT Corporation System<br>330 N Brand Blvd.<br>Glendale, CA 91203<br><br>-and-<br><br>AMDOCS, INC.<br>1390 Timberlake Manor Parkway,<br>Chesterfield, Missouri 63017<br><br>**Serve also:**<br>CT Corporation System<br>4400 Easton Commons Way<br>Suite 125<br>Columbus, Ohio 43219<br><br>Defendants. | CASE NO.:<br><br>JUDGE<br><br>COMPLAINT<br><br>(Jury Demanded) |

Plaintiff, Elisha Samra ("Samra"), by and through undersigned counsel, as her Complaint against Defendants Vubiquity, Inc. ("Vubiquity") and Amdocs, Inc. ("Amdocs") (collectively "Defendants"), states and avers the following:

**PARTIES**

1. Samra is an individual residing in Canfield, Mahoning County, Ohio

2. Vubiquity is a foreign corporation doing business in the State of Ohio.

3. Amdocs is a foreign corporation and the parent company of Vubiquity.

4. At all times referenced herein, Defendants acted as a single, integrated employer in that they shared common management, centralized control of labor relations, common ownership, and interrelated operations.

5. Specifically, Amdocs personnel directly administered Samra's FMLA leave, processed her accommodation requests, maintained her payroll and employment benefits, managed her visa sponsorship, and actively participated in the formulation and execution of the "Operations Optimization Plan" that resulted in her termination.

**JURISDICTION AND VENUE**

6. Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and conduct substantial business within Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

7. Samra performed work for Defendants in this judicial district and was managed by Defendants while working remotely from her Ohio residence since 2018.

8. This cause of action arose from or relates to events that occurred in this district, including Defendants' direction of discriminatory and retaliatory actions toward Samra at her Ohio workplace, thereby conferring specific jurisdiction over Defendants.

9. This Court has subject matter jurisdiction over Samra's federal claims under 28 U.S.C. § 1331 because this action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.

10. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) because Samra would have continued to work in this judicial district but for the alleged unlawful employment

practices.

11. Venue is further proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

**FMLA COVERAGE**

12. At all times referenced herein, Samra operated as a remote employee. Pursuant to 29 C.F.R. § 825.111(a)(2), Samra's worksite was not her personal residence, but rather Defendants' domestic corporate offices to which she was assigned as her home base and from which her work was assigned and administered. This included Vubiquity's office in Burbank, California, and/or Amdocs' office in Chesterfield, Missouri. Defendants employed fifty (50) or more employees within seventy-five (75) miles of these directing worksites.

13. Samra was an "eligible employee" under the FMLA because she had been employed by Defendants for at least twelve (12) months—having a tenure of approximately twelve years—and worked at least 1,250 hours during the previous twelve-month period.

**ADMINISTRATIVE PROCESS**

14. On or about April 11, 2024, Samra filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2024-00232.

15. On or about December 19, 2025, the EEOC issued a Notice of Right to Sue notice to Samra.

16. Samra has timely filed this action within 90 days of receipt of her Right To Sue notice.

**FACTUAL ALLEGATIONS**

17. Samra is a former employee of Defendants.

18. Defendants hired Samra on or about July 28, 2011.

19. Samra is an Australian citizen who performed her professional duties for Defendants under an E-3 visa, a classification reserved specifically for specialty occupation professionals from

Australia.

20. To maintain Samra's legal status to work in the United States, Defendants repeatedly certified to U.S. Citizenship and Immigration Services (USCIS) that her role was so "specialized and complex" that it could only be performed by an individual with a Bachelor's degree or higher.

21. Specifically, Defendants represented to the United States government that Samra's Senior Technical Product Manager position required the attainment of a degree in Business Management or a related field, and that Samra possessed the precise education and high-level experience necessary to fulfill these complex duties.

22. Based on her specialized expertise, Defendants successfully petitioned for multiple extensions of Samra's E-3 visa, most recently in 2022.

23. In late 2022 and early 2023, Defendants further demonstrated their commitment to Samra's long-term employment by initiating formal discussions regarding sponsorship for her Green Card.

24. Throughout her twelve-year tenure, Samra demonstrated exceptional performance and earned several progressively responsible roles, including Media Manager, Business Analyst, Product Owner, and an appointment to the Amdocs Ventures Investment Board.

25. In 2021, Defendants promoted Samra to the role of Senior Technical Product Manager.

26. In this senior capacity, Samra managed complex product roadmaps, documented technical feature requirements as user stories for SCRUM development teams, and spearheaded backlog prioritization across the Sales, Engineering, Operations, and Legal departments.

27. Samra also formulated comprehensive release plans and served as the primary "voice of the customer" during critical development cycles, including story grooming sessions, sprint

planning, and daily standups.

28. Since 2018, Samra performed all of her professional duties as a remote employee from her residence in Canfield, Ohio.

29. On May 24, 2023, Samra sustained a severe head injury that required emergency room treatment, where medical professionals diagnosed her with a severe concussion.

30. Samra immediately notified her department manager and her direct supervisor, Kevin Munroe, of her injury and her need for sick leave.

31. On June 2, 2023, Samra's neurologist observed symptoms of significant cognitive impairment—specifically impacting Samra's ability to concentrate and think—and advised that she required a period of medical leave to recover, as well as a referral for a formal cognitive evaluation.

32. On July 5, 2023, following her formal cognitive evaluation, Samra was officially diagnosed with a cognitive impairment.

33. Samra's cognitive impairment substantially limited her major life activities, including, but not limited to, concentrating, thinking, and working.

34. Samra's cognitive impairment was a "disability" and/or mental or physical impairment, as those terms are defined by Ohio R.C. § 4112.01(A)(13) and/or 42 U.S.C. § 12102.

35. On June 6, 2023, Samra formally requested and began continuous medical leave under the FMLA to facilitate her recovery.

36. Shortly after Samra began her continuous leave, Defendants interfered with her FMLA rights by pressuring her to return to work on a part-time basis, claiming the department was short-handed due to her absence.

37. Yielding to Defendants' pressure, Samra returned to work part-time on July 5, 2023.

38. Defendants' interference with Samra's FMLA rights prejudiced Samra; by forcing her to

work when she required time off to recover from a cognitive injury, Defendants slowed Samra's medical recovery and exacerbated her disability and/or impairment.

39. On or about July 5, 2023, Samra submitted a formal, written request for reasonable accommodations to HR Representative Veronica Lutgen, supported by medical documentation, requesting reduced working hours and additional time to perform certain tasks.

40. That same day, Samra participated in a project call with Defendants' Chief Technology Officer (CTO), Justin Beaudine, where she explicitly disclosed her cognitive impairment; her need for additional time to complete tasks; and the possibility she would require additional FMLA leave to recover from her cognitive injuries.

41. Exactly one week after Samra disclosed her disability to Beaudine, on July 12, 2023, Beaudine finalized a list of employees for termination as part of an "Operations Optimization Plan" ("Layoff List").

42. Internal emails confirm that Beaudine personally provided this termination list to HR on July 12, 2023, only adding Samra's name to the list immediately following her protected activity.

43. Prior to taking FMLA leave and disclosing her disabilities, Samra was not slated for any layoff or reduction in force.

44. Beaudine added Samra to the Layoff List because she was disabled and/or had a physical or mental impairment and/or because Beaudine regarded Samra as disabled and/or as having a physical or mental impairment.

45. Beaudine added Samra to the Layoff List because she had engaged in protected activity under the FMLA.

46. The termination list coded Samra's status as "Release and replace in other country" and

identified “Canada” as the specific target country for her supposed replacement.

47. On August 8, 2023, recognizing that the part-time work schedule was significantly hindering her recovery, Samra submitted a medical request for an eight-week extension to return to full-time FMLA leave.

48. As of August 8, 2023, having utilized approximately four weeks of continuous leave and a proportional fraction of leave during her reduced part-time schedule, Samra retained sufficient FMLA leave entitlement to cover the requested eight-week extension.

49. Defendants denied Samra's request to return to full-time leave.

50. Instead, Defendants approved only a partial leave extension, cutting her doctor-recommended leave period in half and forcing her to continue working a schedule against her physician's orders.

51. Defendants’ partial denial of the August 8 request prejudiced Samra by denying her the full benefit of her FMLA entitlement, resulting in tangible harm by forcing her to work while she still suffered from significant cognitive impairment.

52. Samra remained unaware that she had been targeted for termination until September 29, 2023, when Senior Vice President of Product, Kevin Munroe, informed Samra that her position was being made “redundant.”

53. At the time of her termination, Defendants represented to Samra that her role was simply being eliminated.

54. Defendants intentionally concealed any claim that the position was being relocated offshore to Toronto, Canada.

55. Defendants purposefully withheld this purported “relocation” information from Samra because she had previously expressed an interest in relocating to Canada, and Defendants

wanted to prevent her from requesting a transfer to the supposedly relocated role.

56. It was not until the subsequent EEOC mediation that Defendants first alleged the position had been moved to Canada; these shifting reasons for termination—both the initial "redundancy" and the after-the-fact "offshoring" excuse—were pretextual justifications that masked a discriminatory and retaliatory motive.

57. Defendants actually used Samra's exact job description to post an advertisement for a "Sr. Technical Product Manager" located in Burbank, California.

58. The Burbank job posting required the exact same experience, technical proficiency, and core deliverables that Samra had successfully performed for over a decade.

59. Furthermore, even if the role had genuinely moved to Canada, Defendants never considered Samra for a transfer, never discussed relocation with her, and never explored whether they could obtain any required Canadian work authorization for her.

60. Despite a twelve-year history of exemplary performance and continuous promotions, Defendants abruptly terminated Samra's employment shortly after she became disabled and requested FMLA leave, utilizing a role elimination as a pretext to unlawfully replace her.

61. Defendants officially terminated Samra's employment on November 15, 2023.

62. Defendants terminated Samra because of her actual and/or perceived disability.

63. Defendants terminated Samra because she requested reasonable accommodations for her cognitive impairment.

64. Defendants terminated Samra because she utilized and requested continued protected medical leave under the FMLA.

65. As a direct and proximate result of Defendants' wrongful conduct, Samra has suffered and continues to suffer significant damages, including but not limited to, a substantial loss of past

and future wages, loss of employment benefits, diminished earning capacity, and severe mental anguish and emotional distress.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

66. Samra re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

67. At all times referenced herein, Samra suffered from a cognitive disability and/or impairment resulting from a concussion.

68. At all times referenced herein, Defendants knew that Samra was disabled and/or regarded Samra as disabled.

69. At all times referenced herein, Defendants knew that Samra suffered from physical and/or mental impairments and/or regarded Samra as a person with physical and/or mental impairments.

70. Despite her disabling conditions, Samra was fully competent and qualified for the position of Senior Technical Product Manager, and she was capable of performing her essential job duties with or without accommodation.

71. The ADA defines actionable discrimination as including, among other things, the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, as well as terminating an employee on the basis of disability. 42 U.S.C. 12112(b).

72. Defendants discriminated against Samra in violation of the ADA by failing to engage in a good faith interactive process and failing to provide reasonable accommodations for her cognitive impairment.

73. Specifically, Defendants effectively denied Samra's accommodations by arbitrarily cutting

her doctor-recommended leave extension in half and forcing her to work a fuller schedule against her physician's orders.

74. Defendants further discriminated against Samra in violation of the ADA by terminating her employment because of her actual and/or perceived disability.

75. Defendants' stated reasons for Samra's termination were pretextual and designed to mask their discriminatory intent.

76. As a direct and proximate result of Defendants' discrimination against Samra in violation of the ADA, Samra has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Samra to injunctive, equitable, and compensatory monetary relief.

77. As a further direct and proximate result of Defendants' discrimination against Samra in violation of the ADA, Samra has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

78. In their discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Samra, thereby entitling Samra to an award of punitive damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF OHIO R.C. § 4112.02(A)**

79. Samra re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully rewritten herein.

80. Defendants discriminated against Samra in violation of Ohio R.C. 4112.02(A) by failing to provide reasonable accommodations for her known cognitive impairment, including but not limited to denying her doctor-recommended leave extension and forcing her to work a fuller schedule.

81. Defendants further discriminated against Samra in violation of Ohio R.C. 4112.02(A) by terminating her employment because of her actual and/or perceived disability.

82. As a direct and proximate result of Defendants' discrimination against Samra in violation of Ohio R.C. 4112.02(A), Samra has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Samra to injunctive, equitable, and compensatory monetary relief.

83. As a further direct and proximate result of Defendants' discrimination against Samra in violation of Ohio R.C. 4112.02(A), Samra has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

84. In their discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Samra, thereby entitling Samra to an award of punitive damages.

**COUNT III: RETALIATION IN VIOLATION OF THE ADA**

85. Samra re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully rewritten herein.

86. Samra engaged in protected activity under the ADA by requesting reasonable accommodations for her cognitive impairment.

87. Defendants terminated Samra because she requested reasonable accommodations for her cognitive impairment.

88. Defendants' retaliatory conduct towards Samra violated the ADA, 42 U.S.C. 12203(a).

89. As a direct and proximate result of Defendants' retaliation against Samra in violation of the ADA, Samra has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Samra to injunctive, equitable, and compensatory monetary

relief.

90. As a further direct and proximate result of Defendants' retaliation, Samra has suffered mental anguish and emotional distress, entitling her to compensatory damages.

91. In their retaliatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Samra, thereby entitling Samra to an award of punitive damages.

**COUNT IV: FMLA INTERFERENCE**

92. Samra re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully rewritten herein.

93. At all times relevant to this action, Samra was an "eligible employee," and Defendants were a "covered employer," within the meaning of the FMLA, 29 U.S.C. § 2611.

94. Samra was entitled to protected medical leave under the FMLA due to a serious health condition—specifically, a severe concussion and resulting cognitive impairment—that made her unable to perform the essential functions of her position.

95. Samra provided Defendants with sufficient and timely notice of her intention to take FMLA leave, including her initial June 6, 2023 request for continuous leave, and her subsequent August 8, 2023 request for an eight-week extension of full-time leave.

96. Defendants interfered with, restrained, and/or denied Samra the exercise of her FMLA rights by pressuring her to prematurely return to work on a part-time basis in July 2023, and by arbitrarily denying her medically supported August 8 request for a leave extension.

97. Defendants' interference prejudiced Samra by denying her the full benefit of her FMLA leave, resulting in tangible harm by forcing her to work against medical advice while she still suffered from significant cognitive impairment.

98. This prejudice actively slowed Samra's medical recovery, exacerbated her disability, and

contributed to her subsequent unlawful termination.

99. As a direct and proximate result of Defendants' violations of the FMLA, Samra has suffered economic damages, including but not limited to lost wages, salary, employment benefits, and other compensation.

100. Defendants' violations of the FMLA were willful, deliberate, not in good faith, and without reasonable grounds for believing their conduct complied with the FMLA, thereby entitling Samra to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

**COUNT V: FMLA RETALIATION**

101. Samra re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully rewritten herein.

102. Samra engaged in statutorily protected activity by utilizing FMLA leave and by requesting an extension of her protected medical leave.

103. Defendants terminated Samra's employment because she utilized and requested continued protected medical leave under the FMLA.

104. Defendants' retaliatory conduct towards Samra violated the FMLA, 29 U.S.C. § 2615(a)(2).

105. As a direct and proximate result of Defendants' retaliatory termination in violation of the FMLA, Samra has suffered economic damages, including but not limited to lost wages, salary, employment benefits, and other compensation.

106. Defendants' retaliatory termination of Samra was willful, deliberate, not in good faith, and without reasonable grounds for believing their conduct complied with the FMLA, thereby entitling Samra to an award of liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Elisha Samra requests judgment in her favor against Defendants,

jointly and severally, containing the following relief:

(a) An order directing Defendants to place Samra in the position she would have occupied but for Defendants' unlawful treatment of her, or alternatively an award of front pay, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Samra;

(b) An award against Defendants of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Samra for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;

(c) On Counts I, II, and III only, an award against Defendants of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Samra for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering, and any other physical or mental injuries;

(d) On Counts I, II, and III only, an award of punitive damages against Defendants;

(e) On Counts IV and V only, an award of liquidated damages against Defendants in an amount equal to Samra's actual damages, plus prejudgment interest, pursuant to the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii);

(f) An award of costs that Samra has incurred in bringing this action, as well as Samra's reasonable attorneys' fees to the fullest extent permitted by law; and

(g) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*_/s/ Chris P. Wido_*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive, Suite 200
Independence, Ohio, 44131
Phone: (216) 364-1330
Fax: (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Elisha Samra*

## **JURY DEMAND**

Plaintiff Elisha Samra demands a trial by jury by the maximum number of jurors permitted.

*/s/ Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S LAW FIRM**